JIM B. BUTLER (Nevada Bar No. 8389)
MICHAEL R. McCARTHY (Nevada Bar No. 9345)
PARSONS BEHLE & LATIMER
50 West Liberty Street, Suite 750
Reno, NV  89501
Telephone:  (775) 323-1601
Facsimile:  (775) 348-7250
E-mail:  JButler@parsonsbehle.com
         MMccarthy@parsonsbehle.com
         ECF@parsonsbehle.com

FRANCIS M. WIKSTROM (Pro Hac Vice)
MICHAEL L. LARSEN (Pro Hac Vice)
PARSONS BEHLE & LATIMER
201 South Main Street, Suite 1800
Salt Lake City, UT  84111
Telephone:  (801) 532-1234
Facsimile:  (801: 536-6111
E-mail:  FWikstrom@parsonsbehle.com
         MLarsen@parsonsbehle.com
         ECF@parsonsbehle.com

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| SOUTH FORK BAND COUNCIL OF WESTERN SHOSHONE OF NEVADA; TIMBISHA SHOSHONE TRIBE; WESTERN SHOSHONE DEFENSE PROJECT; and GREAT BASIN RESOURCE WATCH,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED STATES DEPARTMENT OF THE INTERIOR; UNITED STATES BUREAU OF LAND MANAGEMENT; GERALD M. SMITH, District Manager, Battle Mountain Field Office,<br><br>Defendants,<br><br>and<br><br>BARRICK CORTEZ, INC.,<br><br>Defendant-Intervenor. | Case No.  3:08-CV-00616-LRH-RAM<br><br>**DEFENDANT-INTERVENOR BARRICK CORTEZ, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS**<br><br>**Judge:  Larry R. Hicks**<br><br>Magistrate Judge:  Robert A. McQuaid, Jr. |

PARSONS
BEHLE &
LATIMER

## INTRODUCTION

On November 20, 2008, Plaintiffs filed a Complaint for Declaratory and Injunctive Relief (the "Complaint") against the United States Bureau of Land Management ("BLM") (and others) alleging, inter alia, that BLM's decision to approve the Cortez Hills Expansion Project (the "Project") will cause a substantial burden on the Western Shoshone people's exercise of religion. Compl. at ¶ 108. As its Second Cause of Action, the Complaint attempts to assert a claim under the Religious Freedom and Restoration Act, 42 U.S.C. §§ 2000cc-5 ("RFRA"). Compl. at ¶¶ 103-111. The operative language of RFRA provides:

> Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability, except . . . Government may substantially burden a person's religion only if it demonstrates that application of the burden to the person—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of further that compelling governmental interest.

42 U.S.C. § 2000bb-1. Defendant-Intervenor Barrick Cortez Inc. ("Cortez") has filed an Answer.

The Complaint fails to state a RFRA claim because the alleged facts do not constitute a "substantial burden" on Plaintiffs' exercise of religion—the threshold question to support a RFRA cause of action under governing Ninth Circuit law. In addition, RFRA does not apply to the federal government's management of its own land, and Plaintiffs lack standing to assert a RFRA claim. Assuming for purposes of this motion only that Plaintiffs can prove all of the allegations in the Complaint, Plaintiffs cannot establish a RFRA claim and the Second Cause of Action should be dismissed pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## BRIEF HISTORY OF RFRA

Congress passed RFRA in response to the United States Supreme Court's decision in *Employment Division, Department of Human Resources of Oregon v. Smith,* 494 U.S. 872, 110 S.Ct. 1595 (1990), in which the Supreme Court held that laws of general application that incidentally burden religious conduct are not subject to strict scrutiny. In reaction to *Smith,* Congress enacted RFRA, 42 U.S.C. §§ 2000bb to 2000bb-4. *See Cutter v. Wilkinson,* 544 U.S. 709, 125 S.Ct. 2113 (2005). RFRA specifically displaces *Smith* by stating that its purpose is to

"*restore* the compelling interest test as set forth in *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790 (1963) and *Wisconsin v. Yoder,* 406 U.S. 205, 92 S.Ct. 1526 (1972) and to guarantee its application in all cases where free exercise of religion is substantially burdened." 42 U.S.C. § 2000bb(b).  As recently determined by the *en banc* Ninth Circuit in  *Navajo Nation v. U.S. Forest Serv.*, 535 F.3d 1058, 1069 (9th Cir. 2008), RFRA also restores  the "substantial burden" tests set forth in pre-*Smith* case law and does nothing to alter the meaning of that language (*See* Exh. 1).

In *Navajo Nation*, the Ninth Circuit performed the task of examining *Sherbert* and *Yoder* to determine what constitutes a "substantial burden" on the exercise of religion.  The court held,

> The Supreme Court's decisions in *Sherbert* and *Yoder*, relied upon and incorporated by Congress into RFRA, lead to the following conclusion: Under RFRA, a "substantial burden" is imposed *only* when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit (*Sherbert*) or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions (*Yoder*). *Any burden imposed on the exercise of religion short of that described by Sherbert and Yoder is not a "substantial burden" within the meaning of RFRA*, and does not require the application of the compelling interest test set forth in those two cases.

*Id.* at  1069-70 (emphasis added); *see also Sherbert v. Verner*, 374 U.S. 398, 399 (1963); *Wisconsin v. Yoder*, 406 U.S. 205, 207-09 (1972).  This narrow standard was recently reiterated by the Ninth Circuit's decision in *Snoqualmie Indian Tribe v. Federal Energy Regulatory Commission*, 545 F.3d 1207 (9th Cir. 2008) (copy attached as Exh. 2).  In *Snoqualmie,* the court again held that, "[u]nder RFRA, a 'substantial burden' is imposed *only* when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit (*Sherbert*) or [are] coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions (*Yoder*)." *Id*. at 1214 (emphasis added, brackets and parenthesis in original).

### STANDARD OF REVIEW

A motion for judgment on the pleadings is warranted if, accepting all the allegations in the pleadings as true and construing them in the light most favorable to the non-moving party, the moving party is entitled to judgment as a matter of law.  *Milne v. Stephen Slesinger, Inc.*, 430 F.3d 1036, 1042 (9th Cir. 2005) (*citing Owens v. Kaiser Found. Health Plan, Inc.*, 244 F.3d 708,

713 (9th Cir. 2001)).  A motion for judgment on the pleadings is subject to the same standards as a 12(b)(6) motion to dismiss.  *McGlinchy v. Shell Chemical Co.*, 845 F.2d 802, 810 (9th Cir. 1988).  Accordingly, dismissal is proper if a party fails to assert a cognizable legal theory or fails to allege sufficient facts to support a legal claim.  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990).  "[T]he court is not required to accept legal conclusions cast in the form of factual allegations if those conclusions cannot reasonably be drawn from the facts alleged."  *Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004).  Conclusory allegations and unwarranted inferences are insufficient to defeat a motion for judgment on the pleadings.  *Id*. Based on these well-settled principles, Plaintiffs' RFRA claim should be dismissed with prejudice.

## ARGUMENT

**I.    THE ALLEGATIONS IN THE COMPLAINT FAIL TO ESTABLISH A "SUBSTANTIAL BURDEN" ON PLAINTIFFS' CLAIMED RELIGIOUS PRACTICES.**

To succeed on a RFRA claim, Plaintiffs must show the BLM's approval of the Project "(1) substantially burdens (2) a sincere (3) religious exercise."  *Gonzales v. O Centro Espirita Beneficente Uniao Do Vegetal*, 546 U.S. 418, 428 (2006); *see also* 43 U.S.C. §§ 2000bb-1 ("Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability . . . .").  Here, the allegations in Plaintiffs' Complaint cannot establish a substantial burden on the Plaintiffs' exercise of religion.[1]

The Ninth Circuit's controlling decision in *Navajo Nation* recently addressed the issue of what qualifies as a "substantial burden" on religion.  535 F.3d 1058 (9th Cir. 2008).  In that case, the *en banc* majority adopted a narrow and controlling definition when it  held that a "'substantial burden' [on religious exercise] is imposed **only** when individuals are forced to choose between following the tenets of their religion and receiving a governmental benefit [] or coerced to act contrary to their religious beliefs by the threat of civil or criminal sanctions."  *Navajo Nation*, 535 F.3d at 1067 (emphasis added).  Plaintiffs have failed to demonstrate a substantial burden on their

---

[1] Cortez does not address in this motion whether the conduct alleged by Plaintiffs in support of their RFRA claim constitutes "exercise of religion" or whether their beliefs are sincerely held.

religion under either alternative of the *Navajo Nation* test. First, Plaintiffs do not even attempt to allege that they will lose a government benefit if they continue to exercise their religion, so the Court need not address the first alternative. Under the second "substantial burden" alternative, Plaintiffs have not alleged facts that demonstrate that the BLM's approval of the project coerces them, under threat of sanctions, to act contrary to their religious beliefs. Hence, under *Navajo Nation's* "substantial burden" test, Plaintiffs fail to raise a cognizable RFRA claim.

The essence of Plaintiffs' RFRA claim is that the Project will prevent them from practicing their religion in certain areas affected by the Project and will otherwise degrade the quality of their religious experience due to visual and auditory disturbances, potential adverse impacts on springs and seeps, and general degradation of the Mt. Tenabo area. Compl. at ¶¶ 46-49. Even if all of these allegations are taken as true, they suggest, at most, a diminishment in the subjective spiritual fulfillment that Plaintiffs will receive from their activities on or near Mt. Tenabo. Under *Navajo Nation*, such reduction of religious experience falls far short of imposing a "substantial burden." In fact, this is precisely the argument that the Ninth Circuit expressly rejected.

In *Navajo Nation*, the Snowbowl ski resort, which operates on Forest Service land in Arizona, sought a permit from the Forest Service to use treated sewage effluent to make artificial snow. The plaintiffs opposed the Forest Service's approval of the plan. They argued that the mountain upon which the ski resort was located was a sacred mountain. The plaintiffs contended that Snowbowl's use of sewage effluent to create artificial snow would desecrate the mountain, eviscerating their ability to practice their religion. *Navajo Nation*, 535 F.3d at 1062-65. But the Ninth Circuit held:

> The only effect of the proposed upgrades is on the Plaintiffs' subjective, emotional religious experience. That is, the presence of recycled wastewater on the Peaks is offensive to the Plaintiffs' religious sensibilities. To plaintiffs, it will spiritually desecrate a sacred mountain and will decrease the spiritual fulfillment they get from practicing their religion on the mountain. Nevertheless, under Supreme Court precedent, **the diminishment of spiritual fulfillment—serious though it may be—is not a "substantial burden" on the free exercise of religion**.

*Id*. at 1070 (emphasis added). The Ninth Circuit went on to say that even if the use of treated

PARSONS
BEHLE &
LATIMER

sewage effluent on the mountain completely destroyed the plaintiffs' ability to worship there, they would still have no cognizable claim under RFRA. *Id*. at 1072. The court also relied heavily on the Supreme Court's decision in *Lyng v. Northwest Indian Cemetery Protective Ass'n*, 485 U.S. 439, 451-53 (1988) (copy attached as Exh. 3), in which the Supreme Court held "[G]overnment simply could not operate if it were required to satisfy every citizen's religious needs and desires . . . No disrespect for these practices is implied when one notes that such beliefs could easily require de facto beneficial ownership of some rather spacious tracts of public property." *Navajo Nation*, 535 F.3d at 1072. Here, Plaintiffs' Complaint presents precisely the same issues that were raised and flatly rejected in *Navajo Nation* and *Lyng*. These cases are controlling and dispositive of the RFRA claims asserted in this case. Under no circumstances can the allegations in the Complaint establish a RFRA claim.

Plaintiffs' RFRA claim is based on allegations related to Mount Tenabo and its surrounding area. Specifically, the Complaint alleges that:

1.  Mt. Tenabo is a place of unique and significant religious importance to Western Shoshone people. Compl. at ¶ 32.

2.  The mountain and its surrounding areas are currently being used for prayer, fasting, purification ceremonies, and other religious practices. *Id*.

3.  The mountain is a source of spiritual renewal, life energy, creation stories, and power that will be destroyed by mining. *Id*. at ¶¶ 32-35.

4.  The Cortez Pit and waste dumps will be located in areas where Western Shoshone pray, conduct sacred sweat ceremonies, gather food and medicinal plants and will destroy these uses. *Id*. at ¶¶ 32-35.

5.  Western Shoshone will be prohibited, under threat of trespass or other sanctions and under threat of personal physical injury, from accessing their traditional religious use areas within the Project boundary due to the perimeter fence that will be constructed around the mine and processing facility. *Id*. at ¶ 46.

6.  The visual and noise intrusions will destroy or seriously degrade their ability to practice their religion. *Id*. at ¶¶ 35, 47.

7.  The Project will prevent gathering of medicinal and food plants used for religious ceremonies. *Id*. at ¶ 48.

8.  The Project will result in the loss or degradation of sacred springs or seeps and affect the purity of the water. *Id*. at ¶¶ 49-51.

None of these allegations, singly or collectively, establishes a showing of "substantial

burden" under *Navajo Nation*.  Since Plaintiffs do not allege that they have lost a government benefit, they must establish that they are or will be coerced into acting contrary to their religious beliefs under threat of sanctions.  *Navajo Nation*, 535 F.3d at 1063.  The closest Plaintiffs come to meeting this standard are the allegations in Paragraph 46:  "Western Shoshone will be prohibited, under threat of trespass or other sanctions and under threat of personal physical injury, from accessing their traditional religious use areas within the Project boundary due to the perimeter fence that will be constructed around the mine and processing facility."

But prevention from "accessing their traditional religious use areas within the Project boundary" under hypothetical threat of trespass is not the same as forcing Plaintiffs to "act contrary to their religious beliefs" under threat of sanctions.  *Navajo Nation* requires that Plaintiffs be forced to engage in conduct contrary to their beliefs, while the Complaint only alleges Plaintiffs will be limited in the places where they may practice their religion.  It is the "governmental coercion" to do something in violation of religious beliefs that qualifies as a substantial burden.  For example, in *Wisconsin v. Yoder*, the Supreme Court found government action to be coercive when, under threat of criminal sanctions, an Amish family was forced to send their children to school even though doing so was "undeniably at odds with fundamental tenets of their religious beliefs."  406 U.S. 205, 218 (1972).  Here, Plaintiffs allege no facts that resemble the coercive conduct found in *Yoder*.  Merely foreclosing Plaintiffs from physically using a very limited portion of the vast government property readily available to them to practice their religion is not an act of government coercion against religion.  Nowhere in the Complaint do Plaintiffs tell the Court how they are being forced to *affirmatively* act in a manner contrary to their beliefs under threat of sanctions.

In fact, Plaintiffs do not allege that their religious beliefs even require them to engage in their religious activities within the limited areas that may be fenced for safety and security reasons.  None of the allegations assert that the Plaintiffs can **only** exercise their religions within the Project area.  The Project affects only a small part of Mt. Tenabo.  Any alleged religious activities can continue in other areas on or around Mt. Tenabo that will not be disturbed by the Project.  As the Supreme Court held in *Lyng*, being completely prevented from practicing one's

religion in a particular area does not qualify as coercion to act in a manner contrary to one's religion.  485 U.S. at 451-53.

Thus, taking the allegations as true, Plaintiffs' RFRA claim fails as a matter of law because nothing in these averments shows that Plaintiffs will be coerced to act contrary to their religious beliefs under threat of sanctions.  The Complaint falls well short of the *Navajo Nation* "substantial burden" test because it ignores a fundamental distinction between forcing a person to do something his religion proscribes (e.g., forcing an Amish family to send their children to public schools, forcing an Hasidic Jew to eat pork, or forcing a Mormon to drink alcoholic beverages) under threat of criminal or civil sanction, and merely precluding a person from worshipping in a particular location on government property, particularly when Plaintiffs have not even alleged (as the plaintiffs did in *Lyng)* that the Project area is the only place such exercise may occur.  Indeed, their Complaint alleges just the opposite.  Plaintiffs allege that they use the mountain itself, its slopes, the pediment area, and Grass Valley for religious practices.  Complaint at ¶ 32.  The Project only disturbs a small part of this territory so the impact is far less than that permitted in *Lyng*.

The remaining allegations, at most, demonstrate a belief that Plaintiffs' religious experiences will be subjectively impacted and generally diminished.  Claiming that certain impacts will "severely degrade" their religious experience simply does not qualify as a substantial burden according to *Navajo Nation*.  As to these allegations, the Ninth Circuit made it abundantly clear that "government action that decreases the spirituality, the fervor, or the satisfaction with which a believer practices his religion ***is not what Congress has labeled a 'substantial burden'*** . . ."  *Navajo Nation*, 535 F.3d at 1063 (emphasis added).  In accordance with *Navajo Nation*, under the facts set forth in the Complaint, Plaintiffs have no cognizable claim under RFRA and the Second Cause of Action should be dismissed.[2]

[2]  Plaintiffs also purport to allege that BLM had an obligation to perform a RFRA analysis as part of its duty to prevent "unnecessary or undue degradation" under FLPMA and that such action is reviewable under the APA.  Compl. at ¶ 111.  However, the BLM's obligation to consider cultural and environmental impacts as part of its "unnecessary or undue degradation" analysis under FLPMA, does not require that the agency attempt to determine whether its action might result in a RFRA "substantial burden" on the exercise of any individual's religion.

**II.     PLAINTIFFS' RFRA CLAIM FAILS BECAUSE RFRA DOES NOT APPLY TO THE GOVERNMENT'S MANAGEMENT OF ITS OWN LAND.**

This argument is fully set forth in Defendant-Intervenor Barrick Cortez, Inc.'s Memorandum in Opposition to Plaintiffs Motion for a Temporary Restraining Order and Preliminary Injunction (*see* Docket No. 21 ("Opposition Memorandum") at 10).  For the Court's convenience, Cortez has substantially reproduced this argument in Exhibit 4, attached hereto.

**III.     PLAINTIFFS LACK STANDING TO BRING A RFRA CLAIM.**

This argument is also fully set forth in Defendant-Intervenor Barrick Cortez, Inc.'s Opposition Memorandum (*see* Docket No. 21 at 13).  For the Court's convenience, Cortez has substantially reproduced this argument in Exhibit 5,  attached hereto.

### CONCLUSION

For the foregoing reasons, Cortez respectfully requests the Court to grant its Motion for Partial Judgment on the Pleadings and dismiss Plaintiffs' Second Cause of Action.

Dated:  December 15, 2008.

Respectfully submitted,

PARSONS BEHLE & LATIMER

By: /s/  Michael R. McCarthy
    Jim B. Butler, Nevada Bar No. 8389
    Michael R. McCarthy Nevada Bar No. 9345
    Francis M. Wikstrom (*pro hac vice*)
    Utah Bar No. 3462
    Michael L. Larsen (*pro hac vice*)
    Utah Bar No. 4069

    50 West Liberty Street, Suite 750
    Reno, NV  89501
    Telephone:  (775) 323-1601
    Facsimile:  (775) 348-7250

    201 South Main Street, Suite 1800
    Salt Lake City, UT 84111
    Telephone:  (801) 532-1234
    Facsimile:  (801) 536-6111

    Attorneys for Barrick Cortez, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on December 15th, 2008, I electronically filed the foregoing **DEFENDANT-INTERVENOR BARRICK CORTEZ, INC.'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PARTIAL JUDGMENT ON THE PLEADINGS** with the Clerk of Court using the CM/ECF system which sent notification of such filing to the following:

Henry Egghart, Nevada Bar No. 3401
630 East Plumb Lane
Reno, NC 89502
Telephone: (775) 333-5282
Facsimile:  (303) 823-5732
Email:  hegghart@nvbell.net

Roger Flynn (*pro hac vice application granted*)
Jeffrey C. Parsons (*pro hac vice application granted*)
WESTERN ACTION MINING PROJECT
P.O. Box 349
440 Main Street, #2
Lyons, CO 80540
Telephone: (303) 823-5738
Facsimile:  (303) 823-5732
Email:  wmap@igc.org

Donna S. Fitzgerald, Connecticut Bar No. 411810
Trial Attorney
Sara E. Costello, Trial Attorney
  Kansas Bar No. 20898
Trial Attorney
United States Department of Justice
Environmental & Natural Resources Division
General Litigation Section
P.O. Box 663
Washington, D.C., 20044-0663
Telephone:  (202) 305-0476
Facsimile:  (202) 305-0506
Email:  Donna.Fitzgerald@usdoj.gov

Gregory A. Bower
United States Attorney
Greg Addington
  Nevada Bar No. 6875
Assistant United States Attorney
United States Attorney's Office
100 West Liberty Street
Suite 600
Reno, NV 89501
Telephone: (775) 784-5438
Facsimile:  (775) 784-5181

/s/ Michael R. McCarthy

PARSONS
BEHLE &
LATIMER

4817-0514-8163.4

- 1-