UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| SOUTH FORK BAND COUNCIL OF WESTERN SHOSHONE OF NEVADA, et al., <br><br> Plaintiffs, <br><br> v. <br><br> UNITED STATES DEPARTMENT OF INTERIOR, et al., <br><br> Defendants. | 3:08-CV-00616-LRH-RAM <br><br> ORDER |

This case is before the court on remand from the Ninth Circuit Court of Appeals. In response to the Ninth Circuit's decision, Defendant-Intervenor Barrick Cortez filed a Motion for Entry of an Appropriately Tailored Preliminary Injunction (#133[1]). Plaintiffs South Fork Band Council of Western Shoshone of Nevada, Timbisha Shoshone Tribe, Te-Moak Tribe, Western Shoshone Defense Project, and Great Basin Resource Watch have responded and filed their own Motion for Entry of a Preliminary Injunction (#135). Defendants United States Department of the Interior, United States Bureau of Land Management ("BLM"), and Gerald D. Smith have responded to both motions (#138).[2]

---

[1] Refers to the court's docket entry number.

[2] Barrick has also requested oral argument and an evidentiary hearing. Because a hearing will not assist the court in its consideration of the issues before it, the court will deny Barrick's request. *See Geerston Seed*

I.     **Facts and Procedural History**

On January 26, 2009, following a four-day hearing, this court denied Plaintiffs' Motion for Preliminary Injunction (#12). On appeal, the Ninth Circuit affirmed the court's order in part and reversed the court's order in part. *See South Fork Band Council of W. Shoshone of Nev. v. U.S. Dep't of Interior*, 588 F.3d 718 (9th Cir. 2009) (per curiam). In particular, the Ninth Circuit confirmed that Plaintiffs had not shown a likelihood of success on the merits for their claims alleging violations of the Federal Land Policy and Management Act ("FLPMA"), 43 U.S.C. §§ 1701-1787. The Ninth Circuit, however, reversed this court's denial of preliminary injunctive relief as to Plaintiffs' claims alleging violations of the National Environmental Policy Act ("NEPA"), 42 U.S.C. §§ 4321-4370. The court found Plaintiffs had shown a likelihood of success on the merits of some of their NEPA claims and remanded for the "entry of an injunction pending preparation of an [Environmental Impact Statement] that adequately considers the environmental impact of the extraction of millions of tons of refractory ore, mitigation of the adverse impact on local springs and streams, and the extent of fine particulate emissions." 588 F.3d at 722.

The Ninth Circuit identified two specific ways in which the Environmental Impact Statement ("EIS") likely violates NEPA. First, the court found that BLM failed to analyze the air quality impacts of transporting ore to an off-site facility. Second, the court held that BLM inadequately analyzed the effectiveness of proposed mitigation measures concerning the environmental impact of mine dewatering. The court also addressed Plaintiffs' challenge to BLM's modeling of particulate matter. Although the court did not expressly find that BLM's analysis violated NEPA, the court stated, "Because the BLM must revise its study of the environmental consequences of this project . . . , it should do separate modeling for PM2.5 particulate emissions." 588 F.3d at 728.

---

*Farms v. Johanns*, 541 F.3d 938, 947 (9th Cir. 2008) (noting that cases involving NEPA violations do not necessarily require evidentiary hearings before an injunction may issue).

## II.     Discussion

The parties dispute the scope of the preliminary injunction that the court must now issue. Barrick and BLM propose a limited injunction prohibiting (1) all off-site shipping of refractory ore from the Cortez Hills open pit and (2) all pumping of ground water in excess of previously approved rates. In contrast, Plaintiffs seek an injunction suspending all activity at the Cortez Hills Project.[3]

"[T]here is no rule requiring automatic issuance of a blanket injunction when a [statutory] violation is found." *N. Cheyenne Tribe v. Norton*, 503 F.3d 836, 843 (9th Cir. 2007). Instead, when injunctive relief is appropriate, to determine the appropriate scope of the injunction, the court must "balance the equities between the parties and give due regard to the public interest." *Id.* As such, in some situations a full injunction will be appropriate and in others the equities will require a partial injunction. *Id.* "A district court has 'broad latitude in fashioning equitable relief when necessary to remedy an established wrong.'" *Id.* (citation omitted).

"A NEPA violation is subject to traditional standards in equity for injunctive relief and does not require an automatic blanket injunction against all development." *Id.* at 842. "When deciding whether to issue a narrowly tailored injunction, district courts must assess the harms pertaining to injunctive relief in the context of that narrow injunction." *Sierra Forest Legacy v. Rey*, 577 F.3d 1015, 1022 (9th Cir. 2009) (citation omitted). Thus, while the Ninth Circuit has concluded that a preliminary injunction is warranted here, in determining the appropriate scope of the injunction,

---

[3]The decision of the Ninth Circuit provides the court with little guidance, as it instructs the court to enter injunctive relief "consistent with this opinion . . . ." 588 F.3d at 729. Although the decision includes a section entitled, "Scope of Injunction[,]" that section focuses almost exclusively on the additional preliminary injunction factors outlined by the Supreme Court in *Winters v. Natural Resources Defense Council*, 129 S. Ct. 365, 374 (2008). At its conclusion, the section briefly touches on the appropriate scope of the injunction, stating, "Suspending a project until [the BLM carefully considers the environmental impacts of a project] . . . comports with the public interest." 588 F.3d at 728. The court does not read this statement as a directive to issue a blanket injunction suspending the project at issue in this case.

3

this court must consider the equities in light of two injunctions the parties have proposed.[4]

Beyond demonstrating a likelihood of success on the merits, a plaintiff seeking a preliminary injunction must establish (1) a likelihood of irreparable injury to the plaintiff if injunctive relief is not granted, (2) a balance of hardships favoring the plaintiff, and (3) that an injunction is in the public interest. *Winters*, 129 S. Ct. at 374 (citations omitted). The court will consider these factors below.

Although the Ninth Circuit found, "The likelihood of irreparable environmental injury without adequate study of the adverse effects and possible mitigation is high[,]" 588 F.3d at 728, the issue now before the court is not whether Plaintiffs will suffer irreparable injury should the project continue in its entirety. Instead, in crafting the scope of the injunction, the court must compare the harm resulting from (1) suspending the Cortez Hills Project and (2) permitting the project to go forward but preventing Barrick from shipping refractory ore from the Cortez Hills open pit to an off-site facility and pumping ground water in excess of previously approved rates. *See Sierra Forest Legacy*, 577 F.3d at 1022 (discussing *Winters* and noting that the district court in *Winters* erred because it took an "all-or-nothing approach to assessing the harms instead of addressing the options actually on the table . . . .")

Plaintiffs contend that the proposed limited injunction will not prevent irreparable harm to the environment for several reasons. First, Plaintiffs fault Barrick's proposed injunction for failing to propose any reduction in PM2.5 emissions. Contrary to Plaintiff's assertions, however, the Ninth Circuit did not actually hold that BLM violated NEPA by failing to analyze the extent of fine

---

[4] The court recognizes that, when faced with NEPA violations, the Ninth Circuit has frequently found injunctions warranted and has indicated that only under "'unusual circumstances,' [may] an injunction may be withheld, or, more likely, limited in scope." *Nat'l Parks & Conservation Ass'n v. Babbitt*, 241 F.3d 722, 738 n.18 (9th Cir. 2001) (citation omitted). The Supreme Court's decision in *Amoco Production Company v. Village of Gambell, Alaska*, 480 U.S. 531(1987), however, calls this language into question. Nonetheless, regardless of whether the "unusual circumstances" language remains valid or whether this case presents such an "unusual circumstance[,]" it is clear that the mere fact of a NEPA violation does not require the court to issue an injunction. Instead, the court must apply the traditional balance of harms analysis. *Nat'l Parks*, 241 F.3d 737.

particulate emissions. Instead, the Ninth Circuit found that BLM's study was "in large part conducted before 2007, when the surrogate analysis it used was appropriate. Because the BLM must revise its study of the environmental consequences of this project as a result of the litigation, it should do separate modeling for PM2.5 particulate emissions." 588 F.3d at 728. Thus, in its decision, the Ninth Circuit only indicated that because BLM must revisit its assessment of the project's environmental impact, it should also separately model PM2.5 emissions. If the court believed BLM's analysis of fine particulate emissions violated NEPA, it would have so held.[5]

Second, Plaintiffs argue that Barrick's proposal will permit Barrick to stockpile refractory ore, and by doing so, Barrick is "essentially asking this court to sanction a revised Plan of Operations while this case proceeds, and without the necessary agency and public review." (Pls.'s Mot. and Resp. (#135) 13.) However, the EIS in fact considered the potential impacts of stockpiling refractory ore. Further, while Plaintiffs state that Barrick may stockpile up to five million tons of refractory ore, this figure is a "life-of-the-mine" estimate for the entire thirteen years the mine will be in operation. As Barrick estimates that during 2010 it will only produce approximately 60,000 tons of refractory ore, Plaintiffs concern over the stockpiling of refractory ore is largely unfounded.

Third, Plaintiffs contend Barrick's proposal to curtail groundwater pumping without specifying the amount of pumping to be stopped will cause irreparable damage to the environment. The court disagrees. Barrick's proposal states that until BLM completes a supplemental EIS, it will prohibit all pumping of groundwater in excess of rates approved before the November 12, 2008,

---

[5] On April 9, 2010, Barrick filed a motion (#146) seeking leave to file the declaration of Richard DeLong. DeLong is the President and Principal Scientist of the environmental consulting firm Barrick retained to model PM2.5 particulate emissions. The firm has prepared a PM2.5 Air Quality Impact Assessment Report and has submitted the report for BLM's review. In his declaration, DeLong states that based on his experience and the modeling completed for the report, it is his opinion that the Project will not cause or contribute to a violation of the air quality standards for PM2.5 under the Clean Air Act. Regardless, because the Ninth Circuit did not find that BLM's analysis of fine particular emissions violated NEPA, DeLong's conclusions do not affect this court's decision.

5

Record of Decision. As such, under Barrick's proposed preliminary injunction, no unauthorized de-watering will occur.[6]

Finally, in arguing that they are likely to suffer irreparable harm, Plaintiffs rely largely on the Ninth Circuit's decision in *National Parks and Conservation Association v. Babbitt*, where the court stated, "[B]ecause NEPA is a purely procedural statute, the requisite harm is the failure to follow the appropriate procedures." 241 F.3d 722, 738 n.18 (9th Cir. 2001) (citation omitted). In so stating, the court relied on the First Circuit's decision in *Sierra Club v. Marsh*, 872 F.2d 497 (1st Cir. 1989). There, the court emphasized that when the government fails to follow NEPA procedures, the harm at stake is not, in fact, "procedural[,]" and is instead a "harm to the *environment* [that] consists of the added *risk* to the environment that takes place when governmental decisionmakers make up their minds without having before them an analysis (with prior public comment) of the likely effects of their decision upon the environment." *Id.* at 500.

Here, Barrick's proposed injunction would prohibit the activities for which the Ninth Circuit has concluded BLM's analysis was inadequate. Thus, under a narrowly tailored injunction, the potential for environmental injury stemming from BLM's violation of NEPA is not at all probable, and a limited injunction can adequately address the risk to the environment recognized in *Marsh*. That this case involves a NEPA violation does not affect this court's obligation to ensure that the injunction is "tailored to eliminate only the specific harm alleged." *E. & J. Gallo Winery v. Gallo Cattle Co.*, 967 F.2d 1280, 1297 (9th Cir. 1992) (citation omitted). Accordingly, the court finds that the likelihood of irreparable injury stemming from a limited injunction prohibiting only those activities for which the Ninth Circuit found BLM's analysis inadequate is small.

Given the limited environmental harm resulting from a tailored injunction and the

---

[6]Plaintiffs contend that Barrick's proposal will require Barrick to rely on water from Barrick's other operations previously approved by BLM, thereby impermissibly revising those operational plans without public or agency review. However, the proposed injunction specifically states that it will not affect previous dewatering authorizations. Thus, nothing in the proposed injunction permits Barrick to engage in unauthorized activity.

6

significant economic harm identified by Barrick and largely conceded by Plaintiffs, the court finds that both the balance of hardships and the public interest favor a narrowly tailored injunction.

**IT IS THEREFORE ORDERED** that Plaintiff's Motion for Preliminary Injunction (#135) is **DENIED**.

**IT IS FURTHER ORDERED** that Barrick's Motion for Leave to File Declaration of Richard DeLong (#146) is **GRANTED**.

**IT IS FURTHER ORDERED** that Barrick's Motion for Entry of an Appropriately Tailored Preliminary Injunction (#133) is **GRANTED as follows**:

(1) BLM shall prepare a Supplemental Environmental Impact Statement ("SEIS") for the Cortez Hills Expansion Project in accordance with the following schedule to address (a) the potential air quality impacts of the off-site transportation and processing of refractory ore from the Cortez Hills Expansion Project under the Plan of Operations approved by the November, 2008, Record of Decision; and (b) the efficacy of the mitigation measures described in the October, 2008, Cortez Hills Expansion Project Final Environmental Impact Statement and November, 2008, Record of Decision to mitigate potential impacts on seeps and springs from groundwater pumping. In conjunction with its study of the potential environmental consequences of these two activities, BLM shall also conduct separate modeling for PM2.5 particulate emissions from the Cortez Hills Expansion Project and include the results of such modeling in the SEIS.

(a) Provided BLM received all baseline data from Barrick by March 1, 2010, BLM shall, by June 1, 2010, complete a draft SEIS and submit for publication in the Federal Register a notice that the draft SEIS is available for public review and comment. If BLM did not receive all baseline data from Barrick by March 1, 2010, BLM will be allowed additional time to prepare the draft SEIS commensurate with the amount of additional time it takes for Barrick to provide BLM with the baseline data. If BLM

determines that it cannot meet this deadline, it will file a status report no later than May 1, 2010, informing the court of the progress made regarding the draft SEIS. The status report will also provide an explanation regarding why the agency needs additional time to complete the draft SEIS and its estimated completion time. If this status report is necessary, BLM will submit subsequent status reports every sixty (60) days until BLM submits the notice of availability of the draft SEIS to the Federal Register for publication. BLM shall allow at least forty-five (45) days from the date of publication of the notice of availability in the Federal Register for public review and comment on the draft SEIS. Upon publication of the notice in the Federal Register, BLM will provide an electronic copy of the draft SEIS to Plaintiffs and Barrick, and their attorneys of record in this case, and will make the draft SEIS available on BLM's website for public review.

(b) Within a reasonable time after the close of the comment period on the draft SEIS, BLM will examine and respond to the comments and make any changes to the draft SEIS that it finds appropriate as a result of the comments or other information. It will then submit for publication in the Federal Register a notice that the final SEIS, including comments received on the draft SEIS and responses to those comments, is available. If BLM determines that publication of the notice will not likely occur within ninety (90) days after the close of the public comment period, BLM will file a status report no later than seventy-five (75) days after the close of the public comment period, informing the court of the progress made on the final SEIS. The status report will also provide an explanation regarding why the agency needs additional time to complete the final SEIS and its estimated completion time. If this status report is necessary, BLM will continue to submit a status report every sixty (60) days until BLM submits the notice of availability of the final SEIS to the Federal Register for publication.

(c) BLM shall issue its Record of Decision within a reasonable time, but not less than sixty (60) days, after the notice of availability for final SEIS is published in the Federal Register, provided the final SEIS does not require further analysis and/or is not referred to the Council on Environmental Quality, pursuant to 40 C.F.R. § 1504.1, et seq.  If BLM determines that issuance of the Record of Decision will not likely occur within sixty (60) days after publication of the notice of availability of the final SEIS, BLM will file a status report no later than forty-five (45) days after publication of the notice of availability of the final SEIS, informing the court of the progress made on the Record of Decision.  The status report will also provide an explanation of why the agency needs additional time to complete the Record of Decision and its estimated completion time. If this status report is necessary, BLM will continue to submit a status report every sixty (60) days until BLM issues its Record of Decision.

(2) While BLM is preparing the SEIS, and unless and until the following activities are authorized by a Record of Decision after completion of the SEIS, Defendant-Intervenor Barrick Cortez is enjoined as follows:

(a) Barrick shall not transport for off-site processing any refractory ore mined pursuant to the Cortez Hills Expansion Project approved by the November, 2008, Record of Decision.

(b) Barrick shall not pump groundwater under the authorization granted by the BLM's November 12, 2008, Record of Decision.  Previous dewatering authorizations shall not be affected by this order, and Barrick may continue to conduct dewatering under those previous authorizations.

(3) Except as expressly provided above, the development and exploitation of the Cortez

///

///

9

Hills Expansion Project may proceed under the Plan of Operations approved by the November, 2008, Record of Decision.

**IT IS SO ORDERED**.

DATED this 13th day of April, 2010.



_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE