GREGORY A. BROWER
United States Attorney

HOLLY VANCE
Assistant United States Attorney
100 West Liberty St., Suite 600
Reno, Nevada 89501
(775)784-5438
(775) 784-5181 - facsimile

IGNACIA S. MORENO
Assistant Attorney General

SARA E. COSTELLO
Trial Attorney
TY BAIR
Trial Attorney
United States Department of Justice
Environment & Natural Resources Division
Natural Resources Section
P.O. Box 663
Washington D.C. 20044-0663
(202) 307-3316 - phone
(202) 305-0274 - facsimile

ATTORNEYS FOR FEDERAL DEFENDANTS

# UNITED STATES DISTRICT COURT
## DISTRICT OF NEVADA

| | |
|---|---|
| SOUTH FORK BAND COUNCIL OF WESTERN SHOSHONE OF NEVADA, *et al.* | ) <br> ) <br> ) CV-N-08-00616-HDM-RAM <br> ) |
| Plaintiffs, | ) <br> ) |
| v. | ) <br> ) REPLY IN SUPPORT OF |
| UNITED STATES DEPARTMENT OF THE INTERIOR, *et al.* | ) FEDERAL DEFENDANTS' <br> ) CROSS-MOTION FOR <br> ) SUMMARY JUDGMENT |
| Defendants, | ) <br> ) |
| and | ) <br> ) |
| BARRICK CORTEZ, INC. | ) <br> ) |
| Defendant-Intervenor | ) <br> ) |

**INTRODUCTION**

Plaintiffs challenge the expansion of a gold mining and processing operation, arguing that the mine's expansion violates the Federal Land Policy and Management Act of 1976 ("FLPMA") and the National Environmental Policy Act ("NEPA"). Following Plaintiffs' motion for summary judgment, Docket Entry ("DE") # 127, Federal Defendants and Defendant-Intervenor each filed cross-motions for summary judgment. DE # 141–42. After Federal Defendants and Defendant-Intervenor filed their briefs, this Court imposed a preliminary injunction that enjoined a narrow range of activities related to two specific NEPA issues identified by the Ninth Circuit. DE # 147. Plaintiffs then filed their Response to Federal Defendants' Cross-Motion for Summary Judgment. DE # 148.

As discussed below, Plaintiffs' Response fails to rebut the arguments Federal Defendants made in support of their Cross-Motion for Summary Judgment. In particular, Plaintiffs fail to establish any basis for this Court to substitute its judgment for the judgment of Federal Defendants, whose actions are entitled to deference under the Administrative Procedure Act ("APA"). The Court should thus grant summary judgment in favor of Federal Defendants.

**I.  Defendants are Entitled to Summary Judgment on Much of Plaintiffs' NEPA Claim.**

NEPA, 42 U.S.C. §§ 4321–70h, requires federal agencies to examine the potential environmental impacts of proposed federal actions. <u>Balt. Gas and Elec. Co. v. Natural Res. Def. Council</u>, 462 U.S. 87, 97 (1983). Plaintiffs allege four deficiencies in the Bureau of Land Management's ("BLM") NEPA analysis. <u>See</u> DE # 142, 20. As discussed below, two of those issues should be decided in Federal Defendants' favor. In addition, two other issues will be superseded by BLM's forthcoming Supplemental

- 2 -

Environmental Impact Statement ("SEIS"); accordingly, the Court should defer ruling on this issues until BLM issues the SEIS.

### A. BLM's Analysis of Impacts from Emissions of Particulate Matter Satisfied NEPA.

In their Cross-Motion for Summary Judgment, Federal Defendants demonstrated that Plaintiffs have failed to show that BLM violated NEPA by not adequately analyzing environmental impacts involving emissions of particulate matter.  First, Federal Defendants explained the FEIS's extensive analysis of particulate matter emissions, which utilized a methodology—prescribed by the United States Environmental Protection Agency—to use $PM_{10}$ emissions as a proxy to predict $PM_{2.5}$ emissions.  DE # 142, 20–23.  Second, Federal Defendants pointed out that the Ninth Circuit, in ruling on Plaintiffs' preliminary injunction motion, found that "BLM gave a reasoned explanation of why separate modeling for $PM_{2.5}$ emissions was not necessary here."  Id. at 23 (quoting DE # 128, 16).  In so finding, the Ninth Circuit upheld this Court's earlier ruling that BLM had not erred in its NEPA analysis with respect to $PM_{2.5}$.

In their Response, Plaintiffs again assert that BLM "failed to" conduct separate modeling for $PM_{2.5}$ emissions.  DE # 148, 19.  However, that statement assumes, without any legal basis, that BLM was required at the time it prepared the FEIS to also conduct separate modeling for $PM_{2.5}$ emissions.  As this Court and the Ninth Circuit have previously held in ruling on Plaintiffs' motion for a preliminary injunction, $PM_{2.5}$ modeling was not required by NEPA in this case.  DE # 147, 2.

Despite that ruling, Plaintiffs ask this Court to "reconsider its preliminary analysis of the record and the Ninth Circuit's decision" and find that BLM violated NEPA by not separately analyzing $PM_{2.5}$ emissions.  DE # 148, 18.  However, Plaintiffs do not explain how the Court's "preliminary analysis of the record" erred.  Indeed, Plaintiffs do not cite to the record and they make no attempt to rebut Federal Defendants' argument that

BLM's very extensive analysis of air quality impacts from particulate matter emissions fully satisfied its obligations under NEPA. See DE # 142, 20–23. In short, Plaintiffs have provided no reason for this Court to deviate from its earlier finding that BLM was not required to conduct separate modeling of $PM_{2.5}$ emissions, which the Ninth Circuit upheld. Consistent with that finding, this Court should find that BLM's analysis of impacts related to $PM_{2.5}$ emissions fully complied with NEPA's obligations.

     **B.**    **Defendant-Intervenor's Participation in the Environmental Review Process Did Not Violate NEPA.**

Plaintiffs claim that "many critical findings in the FEIS were made by Barrick, not BLM," allegedly in violation of NEPA. DE # 142, 23. In their Cross-Motion, Federal Defendants explained that Barrick's involvement in the NEPA process took place in the larger context of BLM's own analysis and the public's participation, all of which informed the hard look BLM took at potential environmental impacts caused by the mine's expansion. DE # 142, 23–26. As discussed in Federal Defendants' Cross-Motion, that hard look satisfied BLM's obligations under NEPA. Id.

In their Response, Plaintiffs point out that Barrick was involved in drafting responses to some public comments, that certain other language proposed by Barrick was included in the FEIS as "almost a verbatim quote," and that BLM deleted other language at Barrick's suggestion. DE # 148, 12–13. With a few additions, these are largely the same allegations made in Plaintiffs' original motion.

Plaintiffs do not, however, identify any legal basis for this Court to find that Barrick's involvement was improper. As Federal Defendants previously pointed out, NEPA allows for extensive participation by an applicant in the NEPA process. NEPA's implementing regulations and BLM's own regulations specifically allow for submission of information by applicants in the NEPA process. See 40 C.F.R. § 1506.5(a) ("It is the intent of this paragraph that acceptable work not be redone, but that it be verified by the

agency."); 43 C.F.R. § 3809.401(c)(1). Ultimately, what is important is that BLM independently evaluated the submission. See DE # 142, 23–26.

The record citations provided by Plaintiffs do not suggest, much less prove, that BLM failed to independently evaluate Barrick's submissions. For instance, Plaintiffs allege that "Barrick **told** BLM to eliminate any reference to Western Shoshone use of the area, **specifically instructing** BLM to" delete certain content. DE # 148, 13 (emphasis added). However, the record does not support Plaintiffs' accusation: The section in question was a track-changes document containing "Barrick's collective and organized **comments**" on the EIS. AR050096 (Barrick's cover letter to its comments) (emphasis added). Nothing in the record suggests that BLM was "instructed" to adopt Barrick's suggestions or modify the EIS to comport with Barrick's comments. To the degree BLM accepted Barrick's comments or submissions, BLM did so as an exercise of its own independent judgment.

Contrary to Plaintiffs' allegations, the record is consistent with the relevant regulations, which allow applicants to submit information during the NEPA process. Nothing in Plaintiffs' record citations suggests that Barrick's participation exceeded what the regulations allow, nor have Plaintiffs cited to anything in the record that suggests BLM failed to take an independent look at Barrick's submissions. Contrary to Plaintiffs' claim, BLM fully satisfied its obligations under NEPA and Barrick's involvement aided, rather than hindered, that process.

**C.   This Court Should Not Reach NEPA Issues Superseded by BLM's Preparation of a Supplemental Environmental Impact Statement.**

Federal Defendants' Cross-Motion for Summary Judgment asked this Court to delay ruling on two NEPA issues on which the Ninth Circuit concluded Plaintiffs are likely to prevail. DE # 142, 26–27. Federal Defendants did not ask the Court to dismiss the claims as moot, to grant summary judgment, or otherwise to rule on the merits.

1  Indeed, Federal Defendants' request is that the Court *not* rule on the merits on these two
2  issues because the forthcoming SEIS will supersede the ellegedly deficient parts of the
3  original EIS.  Federal Defendants' request is consistent with "the power inherent in every
4  court to control the disposition of the causes on its docket with economy of time and
5  effort for itself, for counsel, and for litigants."  Landis v. N. Am. Co., 299 U.S. 248, 254
6  (1936).

7  In their Response, Plaintiffs argue BLM is attempting to "[s]hield" the agency's
8  actions from judicial review and to "[d]eny the Tribes' [r]ight to [d]eclaratory [r]elief."
9  DE # 148, 6.  It is worth addressing each of those contentions separately.

10  First, Federal Defendants are not attempting to avoid judicial review of BLM's
11  actions.  Rather, Federal Defendants' request specifically contemplates that the Court will
12  review BLM's forthcoming SEIS if, after reviewing the SEIS, Plaintiffs continue to assert
13  that BLM's analysis of these issues was insufficient.  The preliminary injunction ordered
14  by this Court recognized that the SEIS will address the two NEPA issues regarding which
15  Federal Defendants are asking this Court to defer judgment.  Because that SEIS will, once
16  effective, supersede any earlier analysis of these issues, it is in the interests of justice,
17  judicial efficiency, and conservation of the parties' resources to delay review until the
18  SEIS is effective.  Conversely, reviewing these issues now, when the forthcoming SEIS is
19  certain to supersede that review, would accomplish nothing, essentially acting as an
20  advisory opinion.

21  Second, Federal Defendants' request to delay review will not deny the Tribe any
22  rights.  Again, as stated above, Federal Defendants' request specifically contemplates that
23  the Court will review BLM's forthcoming SEIS, should Plaintiffs continue to challenge
24  it. In the meantime, this Court has entered a preliminary injunction that will protect
25  Plaintiffs against any irreparable harm while BLM completes the SEIS and this case
26  proceeds further.  DE # 147.  That preliminary injunction, which was not in place when

1  Federal Defendants filed their Cross-Motion, further supports Federal Defendants'
2  request because it is tailored to prevent mining activity related to the two alleged
3  deficiencies in the EIS. Plaintiffs characterize the preparation of the SEIS as taking
4  "many months, at a minimum, with no definitive timeframe for completion." DE 148, 7
5  n.1. However, regardless of how long the SEIS will take to become effective, Plaintiffs
6  have failed to demonstrate how they would be prejudiced by setting these discrete issues
7  aside for later consideration once the SEIS is effective. They cannot demonstrate
8  prejudice because this Court's preliminary injunction ensures they will not be prejudiced.
9      Plaintiffs also point out that the imminent issuance of the SEIS "does not mean
10 that the current FEIS and ROD are not ripe for review." DE # 148, 7. Federal
11 Defendants have not argued that the FEIS and ROD are not ripe for review. Instead,
12 Federal Defendants ask this Court to exercise its inherent power to stay review of these
13 discrete sub-issues until the SEIS is available for review. Exercising that power to avoid
14 unnecessary review will prejudice no party.
15     Based on the aforementioned and the arguments included in Federal Defendants'
16 Cross-Motion, Federal Defendants are entitled to summary judgment on Plaintiffs' NEPA
17 claim.

**II.    Federal Defendants are Entitled to Summary Judgment on Plaintiffs' FLPMA Claim.**

    FLPMA requires that BLM "by regulation or otherwise, take any action necessary to prevent unnecessary or undue degradation of the lands." 43 U.S.C. § 1732(b).[1/] Here, Plaintiffs have failed to establish that BLM acted arbitrarily or capriciously in determining that the mine expansion will not cause UUD of the lands and approving the

---

[1/]    As noted in Federal Defendants' Cross-Motion, the parties to this lawsuit often abbreviate the phrase "unnecessary or undue degradation" as "UUD."

- 7 -

plan of operations. Accordingly, Federal Defendants are entitled to summary judgment on Plaintiffs' FLPMA claim.

**A.     There Will be No UUD to the Public Lands Used by the Western Shoshone for Religious Practices.**

In their Cross-Motion for Summary Judgment, Federal Defendants explained that Plaintiffs mischaracterized the UUD standard in arguing that the alleged prevention and "degradation" of the Western Shoshone's exercise and practice of their religion constituted UUD under FLPMA. DE # 142, 10–13. Plaintiffs' Reply makes clear that Plaintiffs still fail to recognize that the UUD standard, 43 U.S.C. § 1732(b), protects public lands, not private religion. See DE # 148, 24 (alleging that a "central question upon summary judgment" is whether or not BLM's conclusions regarding the use of the pediment area for religious purposes are supported by the administrative record and arguing that "[i]f the record shows these conclusions are not supported by the evidence, then BLM's decision to approve the Project must be set aside"). As Federal Defendants have previously explained, FLPMA does not require the agency to prohibit all mining that might conflict with religious practices, or any other use of the public lands. DE # 142, 12. In order to succeed with their FLPMA claim, Plaintiffs must come forward and show that the mine expansion will cause UUD as that term is defined in the agency's regulations. See, e.g., 43 C.F.R. §§ 3809.420(b)(4); 3809.5. Plaintiffs have not met this burden; thus, their FLPMA claim should be rejected.

Federal Defendants' Cross-Motion also explained that Plaintiffs' allegations regarding Executive Order 13007, 61 Fed. Reg. 26771 (May 4, 1996), failed to establish that BLM violated FLPMA. DE # 142, 14–15. Although Plaintiffs' Reply gives much attention to Executive Order 13007, Plaintiffs offer nothing to salvage their FLPMA

- 8 -

1  claim.²/  For example, Plaintiffs' statements regarding the pediment area at the base of the

2  White Cliffs fail to show that the mine expansion will interfere with Western Shoshone

3  religious activities.  Upon reviewing extensive amounts of information regarding

4  potential impacts on Native American traditional values and culture including tribal and

5  public input, BLM concluded the following about the pediment area:

> <u>Pinon-juniper Woodland</u>.  The pinon-juniper woodland at the base of
> Mount Tenabo <u>historically has been used as a pine nut harvesting area</u> for
> Western Shoshone.  The area has not been used for pine nut harvesting for
> 70 to 100 years because the historic pinon-juniper woodlands were
> clearcut for firewood in the late 1800s and early 1900s (JBR 2003).  The
> current pinon-juniper stands are not mature enough to provide a consistent
> pine nut harvest.  Western Shoshone consultants stated that the pediment
> contained camp sites; however, no specific locations were mentioned
> (Rucks 2000).  During a recent ethnographic study, Western Shoshone
> tribal consultants identified one archaeological site as a possible Shoshone
> pinon camp (Rucks 2004).

AR 56995 (emphasis added).  Indeed, the record shows that the significance of the

pediment area relates to its historic use for pine nut collection and camping – not its use

for religious activities.   Moreover, as BLM explained "no information on the use of the

pinon groves in the study area has been provided to the BLM by tribal individuals and

elders participating in tribal consultation and the ethnographic study.  Therefore, potential

impacts to future pine nut harvesting and the social activities associated with the harvest

cannot be quantified." <u>Id</u>. at 57409.  Thus, Plaintiffs fail to show that the pediment area

constitutes a "specific, discrete, narrowly delineated location on Federal land" that a

practitioner has identified to an agency as having "established religious significance" as

required by Executive Order 13007.  <u>See</u> 61 Fed. Reg. at 26771.

Similarly, the comments cited by Plaintiffs fail to show that the mine expansion

will interfere with Western Shoshone religious activities.  Each of the comments cited by

Plaintiffs, <u>see</u> DE # 148, 26–29, were previously considered by BLM.  <u>See</u>, <u>e.g.</u>, AR

---

²/    In their brief, Plaintiffs repeatedly use the term "Mt. Tenabo Sacred Site."  It is important to not that there is no established "Mt. Tenabo Sacred Site" under FLPMA or Executive Order 13007.

50146–51; 57430–31; 57438–39; 57441–45.  As BLM explained in its response to comments on the Draft EIS:

> It appears that some of the areas the comment identifies as spiritual areas (Cortez Hills Pit and related facilities) currently include mining exploration roads and exploration drill sites, as well as historic mining features that accumulated for over 130 years. . . . Multiple opportunities to provide information to ethnographic studies have not identified specific uses in the areas referenced in the comment.

Id. at 57410.  In any event, the comments at issue make clear that Plaintiffs did not identify a "specific, discrete, narrowly delineated" religious site to BLM during the administrative process as required to trigger the application of Executive Order 13007, 61 Fed. Reg. at 26771, let alone any site that the mine expansion would physically disrupt or block from access.  See id. at 57430, 57438, 57442, 57444 (stressing the spiritual significance of the entire mountain).  See also DE # 128, 9 (rejection by the Ninth Circuit of Plaintiffs' argument that BLM erred by failing to treat the entire mountain as sacred to the tribes).

"BLM went to great lengths to evaluate potential impacts on Native American traditional values and culture."  DE # 69, 26.  In accordance with the APA, BLM's factual conclusions regarding Western Shoshone religious practices should be accepted unless Plaintiffs show that no reasonable fact-finder could agree with such conclusions.  I.N.S. v. Elias-Zacarias, 502 U.S. 478, 481 (1992).  Plaintiffs have not met this burden; accordingly, Federal Defendants are entitled to summary judgment on Plaintiffs' FLPMA claim.  See also DE # 69, 24-28 (finding that "Plaintiffs have failed to present arguments or point to deficiencies in the record indicating that by failing to protect sacred areas, water resources, visual resources, and reserved water rights BLM has permitted unnecessary and undue degradation to public lands in violation of FLPMA"); DE # 128, 7–11 (upholding this Court's ruling).

**B.     There Will be No UUD to the Public Lands from Groundwater Pumping.**

Federal Defendants' Cross-Motion also explained that the administrative record demonstrates that there will be no UUD to public lands from groundwater pumping. DE # 142, 16–18 (noting that Plaintiffs failed to support their arguments regarding flow reductions, explaining that Plaintiffs' allegations about the mitigation strategy are incorrect, and stating that because there are no plans to use the pit lake as a drinking water reservoir, BLM reasonably concluded that the arsenic levels in the lake will not constitute UUD).  Plaintiffs' Reply relies primarily on the Ninth Circuit's opinion to challenge BLM's mitigation plan.  See DE # 148, 37–38.  Plaintiffs still, however, fail to tie their allegations to FLPMA or otherwise show that BLM's determination that groundwater pumping reasonably incident to mining would not cause UUD is arbitrary and capricious.  As Plaintiffs acknowledge the Ninth Circuit did not "rule on the issue of whether . . . dewatering would cause [UUD]." Id. at 37.  In fact, the Ninth Circuit "affirm[ed] the district court's determination that the Tribes failed to show a likelihood of suceeding on their FLPMA claim[]." DE # 128, 11.  Accordingly, Federal Defendants are entitled to summary judgment.

**C.     Plaintiffs Have Not Established Any Violations of the Government's Trust Responsibility.**

Finally, Federal Defendants' Cross-Motion explained that Plaintiffs cannot support their argument that BLM's approval of the mine expansion violates the government's trust responsibility and thus constitutes UUD. DE # 142, 15–16 (arguing that in the absence of a specific duty that has been placed on the government with respect to Plaintiffs and their trust property, the United States' general trust responsibility is discharged by compliance with generally applicable regulations and statutes) (citing Gros Ventre Tribe v. United States, 469 F.3d 801, 810 (9th Cir. 2006); Okanogan Highlands Alliance v. Williams, 236 F.3d 468, 479 (9th Cir. 2000)) (additional citations omitted).

- 11 -

Without citing any authority, Plaintiffs continue to press this point. See DE # 148, 38–39.

As discussed above and in Federal Defendants' Cross-Motion, BLM complied with FLPMA and the agency's surface management regulations; thus, consistent with Ninth Circuit precedent, BLM's general trust responsibility to the Tribes was discharged and Plaintiffs' claim should be rejected. Further, there can be no dispute that the mine expansion does not involve any lands that are held in trust for Plaintiff. Because there is no trust property at issue in this case, Plaintiffs cannot establish that BLM has violated any specific trust responsibility.[3]

Based on the aforementioned and the arguments included in Federal Defendants' Cross-Motion, Federal Defendants are entitled to summary judgment on Plaintiffs' FLPMA claim.

Dated: May 14, 2010

Respectfully submitted,
GREGORY A. BROWER
United States Attorney
HOLLY A. VANCE
Assistant United States Attorney
100 West Liberty St., Suite 600
Reno, Nevada 89501
Telephone: (775)784-5438
Facsimile: (775) 784-5181
IGNACIA S. MORENO
Assistant Attorney General

 /s/ Ty Bair
TY BAIR
Trial Attorney
SARA E. COSTELLO
Trial Attorney
U.S. Department of Justice
Environment & Natural Resources Division

---

[3] Federal Defendants' Cross-Motion further explained that BLM reasonably concluded that there will be no UUD to scenic resources. DE # 142, 18–20. Plaintiffs' Reply makes no attempt to establish otherwise. Plaintiffs' failure to oppose Federal Defendants' Cross-Motion on this basis should be treated as conceded. See LR 7-2(d).

| | |
|---|---|
| 1 | Natural Resources Section |
| 2 | P.O. Box 663<br>Washington, D.C. 20044-0663 |
| 3 | Telephone: (202) 307-3316<br>Facsimile: (202) 305-0274 |
| 4 | |
| 5 | |
| 6 | |
| 7 | |
| 8 | |
| 9 | |
| 10 | |
| 11 | |
| 12 | |
| 13 | |
| 14 | |
| 15 | |
| 16 | |
| 17 | |
| 18 | |
| 19 | |
| 20 | |
| 21 | |
| 22 | |
| 23 | |
| 24 | |
| 25 | |
| 26 | |
| 27 | |
| 28 | |